**Morton ALTSHULER and Stephen J. Hopson**

v.

**PENNSYLVANIA LIQUOR CONTROL BOARD and J–G Japanese Family Restaurant, Inc.**

**Rector, Wardens and Vestrymen of Christ Church in Philadelphia a/k/a Christ Church**

v.

**Pennsylvania Liquor Control Board and J–G Japanese Family Restaurant, Inc.**

**J–G Japanese Family Restaurant, Inc., Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 9, 1999.
Decided May 13, 1999.

Barry Goldstein, Philadelphia, for appellants.

Neal Goldstein and Thomas J. McGarrigle, Philadelphia, for appellees.

Before KELLEY, J., LEADBETTER, J., and JIULIANTE, Senior Judge.

KELLEY, Judge.

The J–G Japanese Family Restaurant (J–G) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) reversing a decision by the Pennsylvania Liquor Control Board (Board), which granted J–G's application for the double transfer of a liquor license. We affirm.

On July 15, 1997, J–G filed an application for a person to person and place to place transfer of restaurant liquor license no. R–6837 to J–G's premises located at 223–225 Market Street, Philadelphia. Pursuant to Section 464 of the Liquor Code,[1] a hearing on the application was held on December 15, 1997 before a hearing examiner. Three objectors appeared before the hearing examiner: (1) Reverend Trimble, the pastor of the Christ Church, which is located within 300 feet of the proposed licensed premises; (2) Morton Altshuler, a resident of a condominium building located within 500 feet and in view of the rear of the proposed licensed premises; and (3) Stephen Hopson, who lives and has his business within 500 feet of the proposed licensed premises. Barry Gutin, the manager of the proposed licensed premises appeared on behalf of J–G.

The hearing examiner recommended that the application be denied on the basis that the application would adversely affect the health, welfare, peace and morals of

---

1. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 4–464. Section 464 provides that a hearing may be held before a hearing examiner by the Board on its own motion or shall be held upon the written request of any applicant for the transfer of a liquor license. After the close of the hearing, the hearing examiner reports his or her recommendation to the Board and the Board shall thereupon grant or refuse the transfer of the liquor license.

the neighborhood within a 500 foot radius under the standards set by Section 404 of the Liquor Code.[2] By order dated January 29, 1998, the Board rejected the hearing examiner's recommendation and approved the transfer of the liquor license. The Board found that there was no evidence that visitors to the church would be affected by the intended use of the premises as an upscale restaurant serving alcoholic beverages. The Board also determined that Altshuler's and Hopson's concerns about potential alcohol related conduct, such as public urination, odors, noise, rodents, debris, illegal parking and boisterous patrons were prospective and not necessarily related to the sale of alcoholic beverages. The Board found that the location of the proposed licensed premises was in a growing restaurant district, the use would be consistent with the nature of the surrounding Old City area, and that there was no indication that J–G's proposed operation would adversely impact the quality of life in the neighborhood.

The objectors appealed the Board's decision to the trial court.[3] On May 19, 1998, the trial court held a *de novo* hearing.[4] Based on recent decisions of this court, the trial court determined that it could only substitute its own findings for those made

by the Board when the evidence before the trial court was substantially different from that before the Board. *See Manayunk Development Corp. v. Pennsylvania Liquor Control Board*, 699 A.2d 1373 (Pa. Cmwlth.1997), *petition for allowance of appeal denied*, 551 Pa. 706, 712 A.2d 287 (1998).

Before the trial court, Reverend Trimble, Altshuler, and Hopson again testified. In addition, Richard Thorn testified as an expert in the areas of urban planning and architecture and Theodore M. Lieverman, resident of the condominium building, testified in opposition to the application. Mr. Gutin testified again on behalf of J–G.

After the close of the hearing,[5] the trial court found that substantially different evidence was presented to the trial court. Therefore, based on *Manayunk*, the trial court concluded that it could substitute its findings for those made by the Board. Applying its findings to the standards set forth in Section 404 of the Liquor Code, the trial court concluded that the granting of a liquor license application to the subject premises would adversely affect the welfare, health, peace and morals of the neighborhood.[6] The trial court also concluded, based on the standards set forth in Section 404, that the application should not

2. 47 P.S. § 4–404. Section 404 provides, in pertinent part, as follows:

Provided, however, that in the case of any new license or the transfer of any license to a new location the board may, in its discretion, grant or refuse such new license or transfer if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school, or public playground, or if such new license or transfer is applied for a place which is within two hundred feet of any other premises which is licensed by the board: And provided further, That the board shall refuse any application for a new license or the transfer of any license to a new location if, in the board's opinion, such new license or transfer would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of five hundred feet of the place proposed to be licensed:....

3. Section 464 permits a party aggrieved by the grant or denial of transfer of a liquor

license to appeal to the court of common pleas within 20 days of the grant or denial.

4. Pursuant to Section 464 of the Liquor Code, the trial court shall hear an appeal from the grant of a transfer of a liquor license *de novo* on questions of fact, administrative discretion and such other matters as are involved. The trial court shall either sustain or over-rule the action of the Board and either order or deny the transfer of the license to the applicant.

5. The parties also filed post-hearing briefs and the Committee to Protect Old Christ Church filed a *amicus curiae* brief with the trial court. The Committee to Protect Old Christ Church has also filed a *amicus curiae* brief with this court in opposition to J–G's appeal.

6. The trial court set forth the following reasons why the granting of the application would adversely affect the neighborhood:

1. The condominium building is located alongside the proposed licensed premises and

be granted because the subject premises is located within 300 feet of a church. Finally, the trial court concluded, based on the findings of fact made by the Board, that the Board abused its discretion in granting the application.[7]

Accordingly, the trial court granted the appeal and reversed the Board's decision granting J–G's application for the transfer of a liquor license. This appeal by J–G followed.

On appeal, J–G raises the following issues:

1. Whether the trial court's substitution of its fact findings for those of the Board was an abuse of discretion and contrary to established case law in the absence of substantially different and relevant facts adduced at trial;

2. Whether the trial court's reversal of the Board and its holding that the grant of a liquor license to J–G would have an adverse effect on the surrounding community was unsupported by substantial competent evidence and constituted legal error and an abuse of the trial court's discretion; and

3. Whether the trial court abused its discretion by speculating that J–G could at some undetermined time in the future change its business operation to something more potentially detrimental, and by adopting such speculation in its findings of fact and conclusions of law.

■ Initially, we note that our scope of review of a trial court's ruling on a licensing decision of the Board is limited to a determination of whether the trial court committed an error of law, abuse of discretion, or made findings of fact that were unsupported by the record. *Arrington v.*

---

is separated from the premises only by an alley, which is about 5 feet wide;

2. The allowance of a liquor license would, irrespective of the present intentions of the managers of the proposed restaurant/bar, permit a liquor establishment there legally to serve alcohol until 2 a.m.;

3. The increase in noise until 2 a.m. from such an establishment located only 5 feet away from the condominium residents would create intolerable living conditions for the residents;

4. The noise generated until 2 a.m. by the subject premises would actually be amplified and worsened for the condominium residents. due to the porkchop configuration of this area, causing the increase in noise to resonate loudly into the condominium building all through the night and the early hours of the morning;

5. Deliveries made to the subject premises via Church Street would occur practically on the door steps of the condominium residents;

6. Any deliveries made to the subject premises via Church Street by truck would substantially interfere with traffic along Church Street and would create congestion along Church Street directly at the condominium building generating disturbing amounts of noise and order for the condominium residents; and

7. Despite the intentions of J–G to create an upscale restaurant/bar at the subject premises, J–G or successive owners of the restaurant/bar could change the nature of the liquor establishment to one more intrusive to the welfare, health, peace and morals of the neighborhood.

7. The trial court determined that the Board abused its discretion for the following reasons:

1. The Board placed little or no significance on the immediate location of Christ Church or the condominium building to the subject property despite the standards set by Section 404;

2. The Board reviewed the matter only in general terms and did not specifically consider the effect that a liquor establishment open until 2 a.m. would have on residents living 5 feet away;

3. The Board did not consider how the granting of a liquor license for the subject premises would affect the residential and historical nature of the neighborhood;

4. The Board permitted the liquor license transfer for the proposed restaurant involving an outdoor area for serving alcohol within 5 feet of residents of the condominium building; and

5. The Board approved the liquor license transfer under the specific assumption that J–G's proposed operation as an upper scale fine dining establishment would not adversely impact the quality of life in the neighborhood; however, J–G is not required to maintain an upper scale establishment and the Board overlooked the effects on the neighborhood of a less than upper scale establishment at the subject premises.

*Pennsylvania Liquor Control Board,* 667 A.2d 439 (Pa.Cmwlth.1995).

In support of the first issue, J–G, relying on *Application of Barone,* 43 Pa. Cmwlth. 446, 403 A.2d 148 (1979) and *Rosing, Inc. v. Pennsylvania Liquor Control Board,* 690 A.2d 758 (Pa.Cmwlth.1997), argues that the evidence presented to the trial court at the hearing *de novo* was substantially the same as that presented to the Board. Therefore, J–G contends that the trial court abused its discretion by substituting its findings for those of the Board.

In response, objectors contend that our Supreme Court now permits trial courts to substitute their discretion for that of Board even if the evidence is identical to that before the Board. We agree.

Our Supreme Court recently clarified that in appeals under Section 464 of the Liquor Code, involving the Board's grant or denial of liquor licenses or the renewal or transfer of such license, the trial court may make its own findings and reach its own conclusions based on those findings even when the evidence it hears is substantially the same as the evidence presented to the Board. *Pennsylvania Liquor Control Board v. Richard E. Craft American Legion Home Corporation,* 553 Pa. 99, 718 A.2d 276, 278 (Pa.1998).[8] In *Craft,* the Supreme Court stated as follows:

> In *Pennsylvania Liquor Control Enforcement v. Cantina Gloria's Lounge, Inc.,* 536 Pa. 254, 259, 639 A.2d 14, 16 (1994), we set forth the correct standard for the trial court's review of a [Board] refusal to grant a liquor license:
>
> We have held that an appeal from a decision of the Board pursuant to this language required the court of common pleas to conduct a de novo review, and in the exercise of its statutory discretion, to make findings and conclusions. We also held that this language permitted a court of common pleas, based upon its de novo review, to sustain, alter, change or modify a penalty imposed by the [Board] whether or not it makes findings which are materially different from those found by the Board. *Adair v. Liquor Control Board,* 519 Pa. 103, 546 A.2d 19 (1988).
>
> Here, the Commonwealth Court reversed the trial court based on its finding that the trial court's findings of fact were not substantially different from those found by [the Board]. Clearly, pursuant to our holding in *Cantina Gloria's Lounge,* the trial court may alter the decision of the [Board] even if its findings of fact are identical to those made by the [Board]. Thus, the trial court here correctly conducted a de novo hearing, made its own findings of fact, and reached its own conclusions based upon those findings, and the Commonwealth Court applied an incorrect standard of review to the trial court's decision.

*Craft,* 553 Pa. at 103, 718 A.2d at 278.

We note that the Supreme Court in *Craft,* makes no distinction between licensing cases and enforcement cases when it cites to *Cantina Gloria's Lounge,* which was an enforcement case. Thus, the Supreme Court has now ruled that its holding in *Cantina Gloria's Lounge* is to be applied without limitation in all licensing appeals under Section 464 of the Liquor Code, as well as in citation/enforcement appeals under Section 471, 47 P.S. § 4–471.[9]

---

8. We note that J–G filed its brief with this court on December 1, 1998. The Supreme Court's decision in *Craft* was initially decided September 30, 1998 and a corrected opinion was issued on November 25, 1998. Therefore, we believe that J–G should have alerted this Court to the case by including it in its brief.

9. We note that recently the Supreme Court, citing *Craft,* issued a per curiam order that granted a petition for allowance of appeal and reversed this Court's decision in *G.C.P. Enterprises Inc. v. Pennsylvania Liquor Control Board,* 555 Pa. 545, 725 A.2d 749 (1999). In *G.C.P. Enterprises,* a licensee appealed a denial of a liquor license renewal application. This Court cited our prior decisions, including *Ball Park's Main Course v. Pennsylvania Liquor Control Board,* 163 Pa.Cmwlth. 636, 641 A.2d 713, *petition for allowance of appeal de-*

■ Accordingly, pursuant to our Supreme Court's decision in *Craft*, a trial court is now permitted to substitute its findings for those of the Board in appeals from licensing decisions made by the Board, whether or not the evidence before the trial court is substantially different than that presented before the Board. Accordingly, it is irrelevant as to whether the evidence before the trial court in this case was different from that before the Board. Pursuant to *Craft*, the trial court was clearly permitted to make new findings of fact, and based on those new findings, to reverse the decision of the Board.

We will address the remaining two issues raised by J–G simultaneously. In support of the second issue, J–G argues that the trial court's decision is unsupported by substantial evidence and an abuse of the trial court's discretion. J–G argues that the evidence presented to establish that the grant of a license to J–G would be detrimental to the community was speculative; therefore, the trial court's resulting findings of fact and conclusions of law were replete with legal error and an abuse of the trial court's discretion. With respect to the third issue, J–G argues that the trial court abused its discretion and committed legal error by speculating that J–G could, at some undetermined time in the future, change its business operation to something more potentially detrimental.

■ The purpose of the Liquor Code is not to promote the sale of liquor, rather it is to regulate and restrain the sale of liquor. *Pittsburgh Stadium, Concessions, Inc. v. Pennsylvania Liquor Control Board*, 674 A.2d 334 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 546 Pa. 687, 686 A.2d 1314 (1996). The Liquor Code, which is remedial civil legislation, is to be liberally construed to effectuate its purpose to protect public health, welfare, peace, and morals. *Hyland Enterprises, Inc. v. Pennsylvania Liquor Control*

*Board*, 158 Pa.Cmwlth. 283, 631 A.2d 789 (1993).

In the present case, the trial court, after making new findings of fact, reversed the Board's decision based on the standards set forth in Section 404 of the Liquor Code, 47 P.S. § 4–404, because: (1) the granting of the liquor license application would adversely affect the welfare, health, peace, and morals of the neighborhood; and (2) the subject premises is within 300 hundred feet of a church. In addition, based on the findings made by the Board, the trial court concluded that the Board abused its discretion in granting the application for the subject premises because, *inter alia*, the Board placed little or no significance on the immediate location of the church to the subject property despite the standards set forth in Section 4–404 of the Liquor Code.

■ Pursuant to Section 404 the transfer of any license to a new location may be refused if the place proposed to be licensed is within 300 hundred feet of any church. 47 P.S. § 4–404. When the denial of a transfer is based upon the 300–foot rule, the fact that a church is within 300 hundred feet of the place proposed to be licensed is, standing alone, a sufficient basis for denial. *Cross Country Entertainment, Inc. v. Commonwealth*, 101 Pa.Cmwlth. 98, 515 A.2d 997 (1986); *Matter of Horner*, 88 Pa.Cmwlth. 102, 488 A.2d 661 (1985); *425–429, Inc. Liquor License Case*, 179 Pa.Super. 235, 116 A.2d 79 (1955).

Accordingly, the trial court did not err in reversing the Board's decision based on the undisputed fact that the Christ Church is located within 300 feet of the subject premises. Since this fact alone is a sufficient basis for denial, we reject J–G's assertions that the trial court erred by determining that the granting of license would adversely affect the welfare, health peace and morals of the neighborhood or by finding that J–G could at sometime in the

---

*nied*, 539 Pa. 655, 651 A.2d 542 (1994), and stated that a trial court may not substitute its own findings for those made by the Board

when the evidence heard by the trial court is substantially the same as the evidence heard by the Board.

future change the character of the establishment.

The trial court's order is affirmed.

### ORDER

AND NOW, this 13th day of May, 1999, order of the Court of Common Pleas of Philadelphia County is affirmed.